UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**DAVID OH**,

        Plaintiff,

v.

**SHCALO GROUP CORPORATION**

        Defendant.

Case No.
Hon.

---

Adam M. Taub (P78334)
Croson, Taub, & Michaels, PLLC
Attorney for Plaintiff
455 E. Eisenhower Pkwy, Ste. 75
Ann Arbor, MI 48108
(734) 519-0872
ataub@ctmlawyers.com

---

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

There is no other pending or resolved civil action arising out of the transactions or occurrences alleged in the Compliant.

Plaintiff David Oh, by and through his attorneys, Croson, Taub, & Michaels, PLLC, hereby alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1. This is an action for retaliation for opposing race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, 42 U.S.C. § 1981, and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), MCL § 37.2101, *et seq.*, and for failing to pay Mr. Oh wages for his

final week of work in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the Michigan Improved Workforce Opportunity Wage Act ("IWOWA"), MCL § 408.931, *et seq.*

2. Plaintiff, David Oh, is an individual who is a citizen of Canton, Michigan in Wayne County.

3. Defendant, Shcalo Group Corporation, is a domestic for-profit corporation located in Novi, Michigan in Oakland County, and with a resident agent in South Lyon, Michigan in Oakland County.

4. Plaintiff is a former employee of Defendant as defined by Title VII and ELCRA.

5. At all times relevant hereto, Plaintiff performed work for Defendant in the Eastern District of Michigan.

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343(a)(4) (jurisdiction over civil rights claims).

7. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claims. The pendant claims are part of the same case or controversy. They do not substantially predominate. They do not raise novel or complex issues. Therefore, exercise of jurisdiction is proper.

8. Venue is proper in this Court because Defendant obligated itself to Plaintiff within the Eastern District of Michigan, Plaintiff was employed by Defendant within the Eastern District of Michigan, and the actions giving rise to this lawsuit occurred within the Eastern District of Michigan.

9. Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging retaliation for opposing race discrimination.

10. Plaintiff's charge was filed within 300 days of the commission of the unlawful employment practices alleged in this claim.

11. Plaintiff received his notice of right to sue from the EEOC prior to bringing the instant action and has filed suit within 90 days of its receipt.

## STATEMENT OF FACTS

12. Plaintiff began his employment with Defendant as an Operations Manager in or about March 2022.

13. In late 2023, at the insistence of Shcalo's President & CEO, Young Kang, Mr. Oh was made an HR Manager.

14. While Mr. Kang told Mr. Oh that he would receive training for this new position, that did not occur.

15. Nonetheless, at all times relevant hereto, Plaintiff performed his job diligently and competently and was well-qualified for the position he held.

3

16. Among other duties as HR Manager, Mr. Oh assisted in the hiring of workers for Shcalo. In doing so, however, Mr. Oh witnessed numerous instances of race discrimination, which he opposed.

17. For example, on or about September 21, 2023, Mr. Oh conducted three interviews with Mr. Kang and Caleb Lee, another HR Manager.

18. One of the job candidates was black, and Mr. Oh thought his interview went well.

19. However, in front of Mr. Kang, Mr. Lee stated that he did not want black people working in the office at the Belleville, Michigan warehouse.

20. Mr. Oh told Mr. Kang that Mr. Lee's statement was "not right" and also informed the company Defendant contracted under of what he had witnessed.

21. Additionally, on or about October 27, 2023, Mr. Oh was hiring for a Logistics Operations Coordinator position.

22. Mr. Lee called Mr. Oh and asked him if he had Facebook. Mr. Oh said that he did not, but Mr. Lee wanted Mr. Oh to look on Facebook to determine if applicants were black.

23. If they were black, Mr. Lee did not want to see their resumes.

24. One applicant did not have a Facebook, so he received an interview. When it turned out that the applicant was black, Mr. Lee told Mr. Oh to continue looking for other candidates for the position.

25. Mr. Oh informed Mr. Kang of Mr. Lee's conduct and again opposed it.

26. Mr. Lee also discriminated against the Shipping and Receiving Manger at the Novi warehouse, who was also black.

27. Moreover, Mr. Lee terminated two black hi-lo drivers and then informed Mr. Oh that he wanted to terminate the Shipping and Receiving Manager as well.

28. He specifically told Mr. Oh that he wanted to do so because he did not want any black people working in the office at the Novi warehouse.

29. Again, Mr. Oh informed Mr. Kang of Mr. Lee's conduct and opposed it.

30. Instead of disciplining Mr. Lee for his severe racially discriminatory conduct, Shcalo began retaliating against Mr. Oh for his opposition to it.

31. On or about November 16, 2023, Mr. Oh received a performance review. Mr. Kang informed Mr. Oh that as a result of Mr. Oh's transition from operations to human resources, Mr. Oh would likely receive a pay cut even though Mr. Oh had taken the position with the understanding that he was receiving a promotion.

32. Oddly, despite Mr. Kang being the head of Shcalo, he told Mr. Oh to contact Mr. Lee about this proposed pay cut.

33. When Mr. Oh told Mr. Lee what he had been told by Mr. Kang, Mr. Lee was surprised as Mr. Kang had told him to cut Mr. Oh's salary by half.

34. However, when Mr. Oh called Mr. Kang after speaking with Mr. Lee, Mr. Kang stated that maybe Mr. Oh would have his salary reduced from approximately $85,000 to $65,000 or $70,000.

35. In the meantime, Mr. Oh was told to continue working and that his pay would not be cut until further notice.

36. As a result, Mr. Oh continued working.

37. However, on December 1, 2023, Shcalo terminated Mr. Oh's employment, claiming that there was not enough work for Mr. Oh.

38. Oddly, Shcalo also told Mr. Oh that his termination would be effective November 24, 2023, and Mr. Oh did not receive compensation for the week he worked between November 24th and December 1st.

39. Regardless, Shcalo's stated reason for termination was false.

40. There was plenty of work for Mr. Oh. In fact, Shcalo had just received a new contract that would have required Mr. Oh to fill 30-50 positions.

41. In reality, Defendant terminated Plaintiff because of his multiple complaints opposing Mr. Lee's race discrimination against workers and job candidates.

## COUNT I
## RETALIATION IN VIOLATION OF TITLE VII

42. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

43. At all times relevant hereto, Plaintiff was an employee, and Defendant was his employer under the definitions contained in Title VII, 42 U.S.C. § 2000e(b), (f).

44. At all times relevant hereto, Defendant engaged in interstate commerce and employed more than 15 employees and is thus subject to the requirements of Title VII.

45. Plaintiff engaged in protected activity under Title VII, 42 U.S.C. § 2000e-3(a) by opposing discrimination against workers and job candidates on the basis of their race, including by reporting such discrimination to the President and CEO of the company.

46. Defendant was aware of Plaintiff's protected activity and thereafter subjected Plaintiff to adverse employment actions including, but not limited to, threatening a reduction in wages and terminating Plaintiff's employment.

47. Defendant's actions were motivated by unlawful retaliation against Plaintiff due to his protected activity.

48. But for Plaintiff's protected activity, Defendant would not have subjected Plaintiff to such adverse employment actions.

49. Defendant's actions in violation of Title VII were willful.

50. Defendant's actions were taken in reckless disregard of Plaintiff's federally protected civil rights, entitling Plaintiff to punitive damages.

51. As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and will so suffer in the future.

52. As a further direct and proximate result of Defendant's violation of Title VII, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and impairment of his earning capacity and ability to work, and will so suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## COUNT II
## RETALIATION IN VIOLATION OF 42 U.S.C. § 1981

53. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

54. By the conduct described above, Defendant intentionally retaliated against Plaintiff because of his opposition to race discrimination which violated his right to creation, performance, enjoyment, and all benefits and privileges, of a contractual employment relationship with Defendant, regardless of race, in violation of 42 U.S.C. §1981. *See CBOCS West, Inc. v. Humphries*, 553 U.S. 442 (2008).

55. Plaintiff engaged in protected activity under 42 U.S.C. § 1981 by opposing discrimination against workers and job candidates on the basis of their race, including by reporting such discrimination to Defendant's CEO and President.

56. Defendant was aware of Plaintiff's protected activity and thereafter subjected Plaintiff to adverse employment actions including, but not limited to, threatening to reduce Plaintiff's wages and terminating Plaintiff's employment.

57. Defendant's actions were motivated by unlawful retaliation against Plaintiff due to his protected activity.

58. But for Plaintiff's protected activity, Defendant would not have subjected Plaintiff to such adverse employment actions.

59. Defendant's course of conduct was done with reckless disregard of Plaintiff's federally protected civil rights, entitling Plaintiff to unlimited punitive damages.

60. As a direct and proximate result of Defendant's violation of § 1981, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

61. As a further direct and proximate result of Defendant's violation of § 1981, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of his earning capacity and

ability to work, and will so suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## COUNT III
## RETALIATION IN VIOLATION OF ELCRA

62. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

63. At all relevant times, Defendant was an employer and Plaintiff was an employee covered by and within the meaning of the Elliott-Larsen Civil Rights Act ("ELCRA"), MCL § 37.2201.

64. Plaintiff engaged in protected activity under the ELCRA, MCL § 37.2701, by opposing discrimination against workers and job candidates on the basis of their race, including by reporting such discrimination to Defendant's CEO and President.

65. Defendant was aware of Plaintiff's protected activity and thereafter subjected Plaintiff to adverse employment actions including, but not limited to, threatening to reduce Plaintiff's wages and terminating Plaintiff's employment.

66. Defendant's actions were motivated by unlawful retaliation against Plaintiff due to his protected activity.

67. But for Plaintiff's protected activity, Defendant would not have subjected Plaintiff to such adverse employment actions.

68. Defendant's actions in violation of ELCRA were willful.

69. As a direct and proximate result of Defendant's violation of ELCRA, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and will so suffer in the future.

70. As a further direct and proximate result of Defendant's violation of ELCRA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and impairment of his earning capacity and ability to work, and will so suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

## COUNT IV
## VIOLATION OF THE FLSA

71. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

72. At all times relevant to this action, Plaintiff was an employee of Defendant within the meaning of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.

73. At all times relevant to this action, Defendant was the employer of Plaintiff within the meaning of the FLSA, 29 U.S.C. § 201, *et seq*.

74. Plaintiff provided services and worked for Defendant during the period between November 24, 2023 and December 1, 2023.

75. Defendant intentionally failed to compensate Plaintiff for *any* time worked between November 24, 2023 and December 1, 2023.

76. In violation of the FLSA, Defendant failed to pay Plaintiff his salaried rate—or even minimum wage—for his hours worked between November 24, 2023 and December 1, 2023.

77. Defendant knowingly, intentionally and willfully failed to pay Plaintiff his salary—or even minimum wage—for his hours worked between November 24, 2023 and December 1, 2023, entitling Plaintiff to liquidated damages.

78. As a direct and proximate result of Defendant's violation of the FLSA Plaintiff suffered a loss of wages, entitling him to back pay, liquidated damages in the amount of lost wages, attorneys' fees, costs, interest, and other damages as allowed by law and equity.

## COUNT V
## VIOLATION OF MICHIGAN'S IWOWA

79. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

80. At all times relevant to this action, Plaintiff was an employee of Defendant within the meaning of the Michigan Improved Workforce Opportunity Wage Act ("IWOWA"), MCL § 408.931, *et seq*.

81. At all times relevant to this action, Defendant was the employer of Plaintiff within the meaning of the IWOWA, MCL § 408.931, *et seq.*

82.     Plaintiff provided services and worked for Defendant during the period between November 24, 2023 and December 1, 2023.

83.     Defendant intentionally failed to compensate Plaintiff for *any* time worked between November 24, 2023 and December 1, 2023.

84.     In violation of the IWOWA, Defendant failed to pay Plaintiff his salary—or even minimum wage—for his hours worked between November 24, 2023 and December 1, 2023.

85.     Defendant knowingly, intentionally and willfully failed to pay Plaintiff his salary—or even minimum wage—for his hours worked between November 24, 2023 and December 1, 2023, entitling Plaintiff to liquidated damages.

86.     As a direct and proximate result of Defendant's violation of the IWOWA Plaintiff suffered a loss of wages, entitling him to back pay, liquidated damages in the amount of lost wages, attorneys' fees, costs, interest, and other damages as allowed by law and equity.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, **DAVID OH**, requests that this Honorable Court grant the following relief:

a. Declare the practices and actions of Defendant as unlawful employment practices in violation of Title VII, 42 U.S.C. § 1981, ELCRA, the FLSA, and the IWOWA;

b. Compensatory damages for monetary and non-monetary loss in whatever amount he is found to be entitled;

c. Exemplary damages in whatever amount he is found to be entitled;

d. Punitive damages in whatever amount he is found to be entitled;

e. A judgment for lost wages and benefits, past and future, in whatever amount he is found to be entitled;

f. A judgment for lost salary for the week of November 24, 2023 through December 1, 2023;

g. Liquidated damages in the amount of lost salary for the week of November 24, 2023 through December 1, 2023;

h. An order of this Court reinstating Plaintiff to the position he would have if there had been no wrongdoing by Defendant;

i. An injunction of this Court prohibiting any further acts of discrimination by Defendant;

j. An award of interest, costs and reasonable attorney fees; and

k. Whatever other equitable relief this Court finds appropriate.

Respectfully Submitted,
CROSON, TAUB, & MICHAELS, PLLC

/s/ Adam M. Taub_____
Adam M. Taub (P78334)
Attorney for Plaintiff
455 E. Eisenhower Pkwy, Ste. 75
Ann Arbor, MI 48108
(734) 519-0872

Dated: February 19, 2025        ataub@ctmlawyers.com

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**DAVID OH**,

        Plaintiff,

v.

**SHCALO GROUP CORPORATION**

        Defendant.

Case No.
Hon.

---

Adam M. Taub (P78334)
Croson, Taub, & Michaels, PLLC
Attorney for Plaintiff
455 E. Eisenhower Pkwy, Ste. 75
Ann Arbor, MI 48108
(734) 519-0872
ataub@ctmlawyers.com

---

## DEMAND FOR TRIAL BY JURY

Plaintiff, **DAVID OH**, by and through his attorneys, **CROSON, TAUB, & MICHAELS, PLLC**, hereby demands a trial by jury, for all issues so triable.

        Respectfully Submitted,
        CROSON, TAUB, & MICHAELS, PLLC

        /s/ Adam M. Taub
        Adam M. Taub (P78334)
        Attorney for Plaintiff
        455 E. Eisenhower Pkwy, Ste. 75
        Ann Arbor, MI 48108
        (734) 519-0872

Dated: February 19, 2025        ataub@ctmlawyers.com